IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMANDA CERNY, ANDRA CHERI
MORELAND, ANNA SOPHIA
BERGLUND, TARA LEIGH PATRICK          CASE NO. 6:18-cv-01808-ACC-KRS
a/k/a CARMEN ELECTRA, JACLYN
SWEDBERG, JAMIE EASON MIDDLETON,
KATHRYN SULLIVAN BRAMNICK,
KENNEDY SUMMERS a/k/a TAYLOR LANE,
ROSIE JONES, DENISE MILANI a/k/a
DENISE TRLICA, CARLY LAUREN,
JOANNA KRUPA, and SHELBY CHESNES,

     Plaintiffs,

vs.

THE BOULEVARD DEL, INC. d/b/a
MOLLY BROWN'S d/b/a MOLLY
BROWN'S GENTLEMEN'S CLUB,

     Defendants.

_____/

## DEFENDANTS' MOTION TO SEVER CLAIMS

## AND

## MOTIONS TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION

## AND BASED ON THE IMMUNITY PROVIDED BY 47 U.S.C. §230

COMES NOW, the Defendant, THE BOULEVARD DEL, INC., by and through its

undersigned attorney, and hereby file its Motions directed to Plaintiffs' Complaint (Doc. 1) and

says:

1.    While framed in multiple counts, the essence of the Plaintiffs' Complaint is that

the Defendant posted a photograph of each Plaintiff on its Facebook page without permission.

The Plaintiffs claim that they would ordinarily be entitled to a licensing fee in connection with their photographs and that the use of their respective images by this particular Defendant has the potential to negatively impact their careers. Identical claims by these same models have cropped up throughout the State. *See, e.g.*, Gibson v. White's Place, LLC, No. 3:16-CV-392-J-32JBT, 2017 WL 4169690 (M.D. Fla. Sept. 20, 2017); Gibson v. Resort at Paradise Lakes, LLC, No. 8:16-CV-791-T-36AAS, 2017 WL 3421532 (M.D. Fla. Aug. 9, 2017); Lancaster v. Bottle Club, LLC, No. 8:17-CV-634-T-33JSS, 2017 WL 3008434 (M.D. Fla. July 14, 2017).

2.     This litigation should be severed into two distinct cases pursuant to Rule 21 because of fundamental differences in the underlying facts. The images of Cerny, Moreland, Berglund, Swedburg, Bramnick, Summers, Jones, Lauren and Krupa are social media "selfies" which were posed on Defendant's interactive website site by third parties who simply "liked" the photos. Those images are not linked to any advertising message, or superimposed on images of Defendant's business, or otherwise connected with Molly Brown's. In contrast, the images of Patrick, Middleton, Milani and Chesnes appear to have been posted by the site administrator and are displayed in conjunction with text which could be construed as advertising or promotions. A single trial would inevitably confuse the jury given the likelihood that a false perception of a systematic scheme will arise where there is no claim or facts to support such a claim.

3.     The Complaint fails to state a cause of action for the reasons outlined here and described in more detail in the Memorandum below:

A.     Plaintiffs Cerny, Moreland, Berglund, Swedburg, Bramnick, Summers, Jones, Lauren and Krupa do not state a cause of action under the Lanham Act for false advertising

(Count I) or False Endorsement (Count II) as the posting of Facebook "selfies" cannot be reasonably construed as a commercial advertisement or endorsement; the claims are implausible.

B.    Plaintiffs Cerny, Moreland, Berglund, Swedburg, Bramnick, Summers, Jones, Lauren and Krupa cannot state a claim for misappropriation of likeness under Chap. 540, Fla.Stat. (Count III) or the common law right of publicity (Count IV) because "liking" an image on an interactive website is not a commercial use of the image.

C.    As to the state law claims (Counts III, IV, V and VI) made by Plaintiffs Cerny, Moreland, Berglund, Swedburg, Bramnick, Summers, Jones, Lauren and Krupa, Defendant is protected by 47 U.S.C. §230 ("CDA immunity"). Defendant did not generate the subject content and the image was posted ("liked") on its interactive website by a third party.

D.    As to all of the claims of Plaintiff Jones, the image in question is not actionable for the following reasons:

(1)    The image was not posted for a commercial purpose, but was displayed because it has become a humorous meme.

(2)    It is implausible to believe that the image was posted for promotional purposes or in connection with an advertisement.

(3)    The Plaintiff's image is incidental to the message or amounts to a *scènes à faire* "[1] with the common feature being "any pretty girl"; the humorous message does not take

---

[1] *Scènes à faire* are "expressions that are common to a particular subject matter or are dictated by external factors" MiTek Holdings, Inc. v. Arce Eng'g Co., 864 F. Supp. 1568, 1578 (S.D. Fla. 1994). They have also been described as "stock scenes that naturally flow from a common theme." Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994).

advantage of any "brand" or notoriety of the Plaintiff, but would be equally effective if Plaintiff was replaced by any another buxom female.

     E.    Count V does not state a state law conversion claim because Defendant did not deprive Plaintiffs of any of their property.

     F.    Count VI does not state a cause of action under Florida law for unjust enrichment as the Plaintiffs did not "bestow any benefit" on the Defendants.

## MEMORANDUM OF LAW

**I.**    <u>**Motion to Sever Pursuant to Rule 21, Fed.R.Civ.P.**</u>

    The inquiry into improper joinder of parties or claims is governed by Federal Rules 20(a) and 21. Rule 20(a), <u>Fed.R.Civ.P.</u> governs permissive joinder and provides that multiple plaintiffs can join in a single suit if

    (A)    they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

    (B)    any question of law or fact common to all plaintiffs will arise in the action.

    In this case, the claims asserted by the Plaintiffs certainly involve common questions of law and all are directed against the same Defendant. However, the facts underlying the claims are dramatically different as can be seen from the images attached as exhibits to the Complaint. [2] As noted above, most of the images are "selfies" which were posted by third parties on

---

[2] Attachments to a complaint are a part thereof for all purposes. *See*, Rule 10(c), <u>Fed.R.Civ.P.</u> ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1277 (11th Cir. 2016).

Defendant's website with a simple comment that they were "liked" on Facebook. There is no text associated with those images and no suggestion that they were used for advertisements or promotions. In contrast, four of the Plaintiffs complain of images which appear on their face to be intentionally-placed advertisements with text arguably suggesting a commercial purpose. The difference between those two groups of images are fundamental. In the language of the Rule, the images do not support a claim for joint relief and do not arise "out of the same transaction or occurrence".

Rule 21, Fed.R.Civ.P. provides the remedy where a party or claim has been improperly joined in an action:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

There is a general preference in the Federal system to combine claims so as to limit the number of separate trials. *See, e.g.*, Alexander, 207 F.3d at 1323 *citing*, United Mine Workers v. Gibbs, 383 U.S. 715, 724, 86 S.Ct. 1130, 1137 (1966). However, that policy must yield where misjoinder brings the possibility of prejudice to a litigant:

> On the other hand, the prejudicial effects of other witnesses' alleged discriminatory experiences may outweigh their probative value where, for example, the alleged discrimination occurs during different time periods, *see, e.g.*, Annis v. County of Westchester, 136 F.3d 239, 247 (2d Cir. 1998); Williams v. The Nashville Network, 132 F.3d 1123, 1130 (6th Cir. 1997), different supervisors make the challenged decisions, *see, e.g.,* Annis, 136 F.3d at 246–47; Williams, 132 F.3d at 1130; Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1221 (5th Cir. 1995), or the alleged discrimination happens at geographically removed places, see*, e.g.,* Williams, 132 F.3d at 1130; Mooney, 54 F.3d at 1221.

Alexander, 207 F.3d at 1324.

The prejudice to Defendant in this instance arises from two aspects of the Plaintiffs' claims. First is the issue addressed by Alexander: the lack of common facts and the possibility that a jury will presume the existence of a common discriminatory purpose where none is present or even pled. Second, the Plaintiffs' claims center on the commercial use of the images. There is a serious risk in this case that facts showing a commercial use of three of the images may "bleed over" into a finding that all the other images of the different Plaintiffs must therefore have been used for commercial purposes.

## II.    Motion to Dismiss for Failure to State a Cause of Action

### A.    Standard of Review.

The general standards for evaluating a motion to dismiss are well known to the Court. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) *quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007).

> A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is not adequate to survive a Rule 12(b)(6) motion to dismiss. Twombly, 550 U.S. at 555, 127 S.Ct. at 1965. Rather, "[t]o survive ... a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (*quoting* Twombly, 550 U.S. at 570, 127 S.Ct. at 1974). A facially plausible claim must allege facts that are more than merely possible. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. Factual allegations that are "'merely consistent with' a defendant's liability" fall short of being facially plausible. Id. at 678, 129 S.Ct. at 1949 (*quoting* Twombly, 550 U.S. at 557, 127 S.Ct. at 1966). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.

Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012).

**B.     The Lanham Act Claims Fail for most of the Plaintiffs because Defendant did not make Commercial Use of their Images.**

Plaintiffs assert a claim under the Lanham Act in Counts I (False Advertising) and II (False Endorsement) of the Complaint based on the fact that their image appeared on the Molly Brown's Facebook page. However, not every use of a product name, or an image, or an individual's likeness represents a violation of the Lanham Act. Most of the images at issue in this case are not of the kind commonly associated with advertisements and none was presented in a context that would suggest any promotional intent. [3]

Plaintiff Cerny's allegations are typical of those asserted by each of the Plaintiffs:

48.     DEFENDANT used a stolen image of Plaintiff Cerny to entice the public to visit is strip club. On January 10, 2016, Molly Brown's uploaded Cerny's selfie image to its Facebook page and captioned it with "at Molly Brown's" to insinuate that Cerny is a stripper working at Molly Brown's and she has consented to the use of her image on Molly Brown's Facebook page.

(Doc. 1 at 9-10, ¶48). Cerny's image, which allegedly appeared on Molly Brown's Facebook page, is also typical of the images at issue in this litigation:

---

[3]  The images subject to this section of the Motion to Dismiss are those of Cerny, Moreland, Berglund, Swedburg, Bramnick, Summers, Jones, Lauren and Krupa. Defendant concedes for purposes of this Motion to Dismiss that the images of Patrick, Middleton, Milani and Chesnes appear in a context of which can be fairly construed as an advertisement.



(Doc. 1-1 at 2). All of the images are properly described in the Complaint as "selfies". None appear to be professionally staged and all have poor lighting and low production values. Most were apparently taken in the Plaintiffs' homes with many of them staged in their bathrooms – surely the least glamorous room in the house. These images were apparently acquired from Plaintiffs' Facebook pages[4] and posted on the Defendant's Facebook page – a social media platform which charges nothing for access to the Plaintiff's site.[5]

---

[4]  The only exceptions are the image of Ms. Krupa, which appears to have originally been posted on Maxim.com before it was "liked" on the Molly Brown's Facebook page (Doc. 1-12 at 2), and the image of Ms. Jones (Doc. 1-9 at 2) which appears literally all over the Internet.

[5]  Facebook users no doubt assume that the entire universe is aware of the details of that social media platform and how it works. For the rest of us, Wikipedia provides a useful description:

The relevant statutory provision is section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides:[6]

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any … symbol, or device ... or any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which -
>
> **(A)**   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

The threshold issue for any Lanham Act claim is whether the alleged infringer made use of the image or likeness "in commerce":

> The Lanham Act prohibits false advertising in connection with "commercial advertising or promotion." 15 U.S.C. §1125(a)(1)(B) (emphasis added). The Eleventh Circuit defines "commercial advertising or promotion" as encompassing four elements:

---

> Facebook, Inc. is an American online social media and social networking service company… Facebook can be accessed from a large range of devices with Internet connectivity, such as desktop computers, laptops and tablet computers, and smartphones. After registering, users can create a customized profile indicating their name, occupation, schools attended and so on. Users can add other users as "friends", exchange messages, post status updates, *share photos, videos and links*, use various software applications ("apps"), and receive notifications of other users' activity. Additionally, users may join common-interest user groups organized by workplace, school, hobbies or other topics, and categorize their friends into lists such as "People From Work" or "Close Friends". Additionally, users can report or block unpleasant people. (emphasis added).

"Facebook", https://en.wikipedia.org/wiki/Facebook (Last accessed 11/28/18).

---

[6]  Plaintiffs complain that their "likeness" was used without their permission. They are not suing for violation of any common law or registered trademark, nor could they. *See*, ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 922 (6th Cir. 2003) ("We hold that, as a general rule, a person's image or likeness cannot function as a trademark.").

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations ... must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

Edward Lewis Tobinick, MD v. Novella, 848 F.3d 935, 950 (11th Cir. 2017) (internal quotation marks and brackets omitted). The parties dispute whether Plaintiff sufficiently alleges the first element of "commercial speech," which is a threshold requirement for liability under the Lanham Act. See Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1120 (8th Cir. 1999).

The concept of commercial speech under the Lanham Act mirrors the commercial speech doctrine under the First Amendment. Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1274 (10th Cir. 2000); see also Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1323 (11th Cir. 2010). The "core notion" of commercial speech encompassed "speech that propose[s] a commercial transaction." Edward Lewis Tobinick, MD, 848 F.3d at 950. Even if a communication falls outside "core" commercial speech, the Supreme Court clarified in Bolger v. Youngs Drug Products Corp. that the communication may still be considered commercial if: (1) the communication is an advertisement, (2) the communication makes reference to a specific product, and (3) the speaker has an economic motivation for the communication. 463 U.S. 60, 66–67, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983).

Incarcerated Entm't, LLC v. Warner Bros. Pictures, 261 F.Supp. 3d 1220, 1227–28 (M.D. Fla. 2017); See, also, Dryer v. Nat'l Football League, 55 F.Supp. 3d 1181, 1202 (D. Minn. 2014) ("The Lanham Act applies only if the speech involved is commercial speech…").

Plaintiffs assert that their images have commercial value simply because they are professional models. However, it implausible to suggest that the images attached to the Complaint were used for a commercial purpose, represented any competition with the Plaintiffs'

business[7] or had the real potential to confuse any customer. *See, generally*, <u>Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.</u>, 299 F.3d 1242, 1250 (11th Cir. 2002) ("To succeed on a claim of false advertising, the plaintiff must establish that 'the defendant's deception is likely to influence the purchasing decision.'" (citation omitted)).

There are no allegations in the Complaint that Defendant was making money directly from the Plaintiffs' images through selling the photos or charging admission to the site to view the images. There is nothing about the images which suggests a commercial transaction or commercial purpose. They are the same unembellished images which appeared on the Plaintiffs' own Facebook pages. Furthermore, they are same images that would appear on any Facebook user's page who "liked" that image, whether the user is Ms. Cerny's grandmother, a fanboy in Iowa or Molly Brown's in Daytona Beach. There are no words associated with the image that suggest any connection with the Defendant other than the fact that some person "liked" the picture and linked it to Defendant's Facebook page.[8] For instance, there is no statement such as

---

[7] The fact that the images were likely first posted by the Plaintiffs on their Facebook page and were later liked and reposted on the same social media platform cannot plausibly be seen as a competitive act. *Compare*, <u>Therma-Scan, Inc. v. Thermoscan, Inc.</u>, 295 F.3d 623, 637 (6th Cir. 2002) ("Nor does the availability of information about the parties' goods and services on the Internet automatically lead to the conclusion that they use common marketing channels.... because a non-specific reference to Internet use is no more proof of a company's marketing channels than the fact that it is listed in the Yellow Pages of the telephone directory.").

[8] Plaintiffs allege that the Defendant added the words "at Molly Brown's" to suggest that the individual portrayed in the selfie would actually be present at the club. *See. e.g.*, (Doc. 1 at 9-10, ¶48). However, it is apparent that the moniker "at Molly Brown's" is simply the user handle which appears automatically for any Twitter or Facebook posts on the Molly Brown's site. That verbiage only identifies the user; it is not meant to suggest that the person who is shown in the post is literally "at Molly Brown's". The same information would appear if the post showed a picture of a cat playing the piano or a piano dropped on a cat. Other courts have observed that the addition of this information is not equivalent to adding content to an image. *See, e.g.*, <u>Roca Labs,</u>

"now appearing at Molly Brown's" or "Plaintiff X says that Molly Brown's is the best club on the beach". Instead, the posts are presented for exactly what they are: anonymous images of attractive women who some third party "liked" on Facebook.

The "selfie" images at issue here should be compared to the image of Patrick, Middleton, Milani and Chesnes which arguably *do* appear in a commercial context as advertisements. (Doc. 1-4; 1-6; 1-10; 1-13). Each of the latter images either appears as a conventional advertisement or is associated with text advising of drink specials or other information about the club. Patrick, Middleton, Milani and Chesnes may have stated a cause of action under the Lanham Act; the remaining Plaintiffs have not.

**B.**     **There is no Liability Under Chapter 540, Fla.Stat. or the Common Law Right of Publicity for most of the Plaintiffs because Defendant did not make Commercial Use of their Images.**

Just as the Lanham Act is limited to circumstances in which an image, mark or product is used in commerce, the Eleventh Circuit has determined that there can be no liability under Florida's statutory equivalent – Chapter 540 – or under the state's common law publicity tort, absent a commercial purpose:

> [W]e hold that it is clear from Almeida's complaint that Amazon did not use Almeida's image for trade, commercial, or advertising purposes as those terms are used in the statute.… Courts have interpreted the statute's commercial purpose requirement to require that a defendant's unauthorized use "directly promote" a product or service. *See* Tyne v. Time Warner Entm't Co., L.P., 901 So.2d 802, 808 (Fla.2005) (stating that "[t]he purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with

Inc. v. Consumer Opinion Corp., 140 F. Supp. 3d 1311, 1321 (M.D. Fla. 2015) (Finding that the addition of a handle reading "@rocalabs" or "@pissedconsumer" and a link to the tweets did not alter the original content so that the website would lose CDA immunity).

something else"); <u>Loft v. Fuller</u>, 408 So.2d 619, 622–23 (Fla.Dist.Ct.App.1981) (explaining that "Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher"). Applying this standard, courts have held that the use of an image in a publication is not for a "commercial purpose" under section 540.08 merely because the publication is offered for sale. <u>Valentine v. C.B.S., Inc.</u>, 698 F.2d 430, 433 (11th Cir.1983); <u>Loft</u>, 408 So.2d at 622.

<u>Almeida v. Amazon.com, Inc.</u>, 456 F.3d 1316, 1325–26 (11th Cir. 2006); *See, also*, <u>Fuentes v. Mega Media Holdings, Inc.</u>, 721 F.Supp. 2d 1255, 1260 (S.D. Fla. 2010)("To prevail on the common law claim, Plaintiff must allege Defendant commercially used the value of Plaintiff's name for commercial, trade, or advertising purposes."); <u>Abaza v. Publix Supermarkets, Inc.</u>, 2016 WL 3126731 at *2 (M.D. Fla. 2016) (Citing <u>Almeida</u> for the same proposition).

The images complained of do not propose a commercial transaction. Neither are they advertisements in any conventional sense. It might be plausible to believe that a website with pictures of pretty women might drive traffic to that site. However, the Plaintiffs do not allege that the Defendant is in the business of web advertising or that it derives profits from its website. Instead, Plaintiffs ask the Court to take a leap of faith, based on the barest of factual allegations, that a patron might believe that the anonymous women in the selfies – all of which are obviously taken from social media sites – are waiting to meet them at Molly Browns. The failure to tie the selfies to any plausible commercial use, dooms the claims based on the Lanham Act and it dooms the parallel claims brought under Chapter 540 and Florida's common law pertaining to the right of publicity.

### C.  47 U.S.C. §230 Provides Immunity from State Law Claims Associated with the Plaintiffs' "Selfie" Images

In Counts III,  IV,  V and  VI  of the Complaint, Plaintiffs  Cerny,  Moreland,  Berglund,

Swedburg, Bramnick, Summers, Jones, Lauren and Krupa assert causes of action arising under

state law. These include statutory claims under Chapter 540, Fla.Stat. as well as common law

torts all involving claims that Defendant "misappropriated" Plaintiffs' images.[9] All of the state

law claims are barred by the immunity afforded by 47 U.S.C.A. §230(c)(1) of the

Communications Decency Act:

> (1)     Treatment of publisher or speaker
>
> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

"The purpose of the CDA is to establish 'federal immunity to any cause of action that would

make service providers liable for information originating with a third-party user of the service.'"

e-ventures Worldwide, LLC v. Google, Inc., 188 F.Supp. 3d 1265, 1273 (M.D. Fla. 2016)

*quoting* Almeida, 456 F.3d at 1321; *See, also*, Jones v. Dirty World Entm't Recordings LLC, 755

F.3d 398, 406–07 (6th Cir. 2014) ("Although § 230(c)(1) does not explicitly mention immunity

or a synonym thereof, this and other circuits have recognized the provision to protect internet

---

[9]   Again, the images of the named Plaintiffs should be distinguished from those of Plaintiffs, Patrick, Middleton, Milan and Chesnes. With the exception of the humorous image of Jones, the first set of images are "selfies" taken by the Plaintiffs themselves, apparently posted on their social media pages and then duplicated on the Defendant's Facebook page when a third party user "liked" the image. There is no content associated with the images other than identifying Molly Brown's as the owner of the interactive Facebook page. "Liking" an image on Facebook is a common phenomenon associated with associational speech among social media users. There is no reason to associate that favorable comment with commercial speech. In contrast, the images of the four other Plaintiffs is presented either as a conventional advertisement (Patrick) or are associated with text which could be considered commercial in nature (i.e. drink specials and the like). While it is still unreasonable to believe that a patron would think that those four Plaintiffs endorsed the club, it is at least within the realm of plausibility. The same cannot be said for the other Plaintiffs.

service providers for the display of content created by someone else."). Courts in the Middle

District of Florida have applied a three part test for evaluating whether §230 immunity applies:

> To enjoy immunity under Section 230, the following are required: "(1) defendant
> be a service provider or user of an interactive computer service; (2) the cause of
> action treats a defendant as a publisher or speaker of information; and (3) a
> different information content provider provided the information."

Roca Labs, Inc. v. Consumer Opinion Corp., 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015); *See,*

*also*, Whitney Info. Network, Inc. v. Verio, Inc., 2006 WL 66724 at *2 (M.D. Fla. 2006).

The threshold issue is whether a website or social media platform is an "interactive

computer service". A recent decision from the Middle District of Florida provides useful

guidance on this subject:

> "Interactive computer service" is defined as "any information service, system, or
> access  software provider that provides or  enables computer access  by  multiple
> users  to  a computer server...." Id. at  §  230(f)(2).  In  contrast, an "information
> content provider" is "any person or entity that is responsible, in whole or in part,
> for the creation or development of information provided through the Internet or
> any other interactive computer service." Id. at §230(f)(3). An interactive computer
> service provide or user may claim immunity only with  respect to information
> provided by another information content provider. Carafano v. Metrosplash.com,
> Inc., 339  F.3d  1119,  1123  (9th Cir. 2003).  But  an entity can be  both
> a service provider or user  and  an  information  content  provider. Fair Housing
> Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1162
> (9th Cir. 2008) (en banc). …
>
> Websites that allow  third parties to make posts regarding a product
> or service, regardless of whether the post is made anonymously or under a
> pseudonym, have been held to be interactive computer services. Regions Bank v.
> Kaplan, No. 8:12–cv–1837–T–17MAP, 2013 WL 1193831, at *18 (M.D. Fla.
> Mar. 22, 2013) (stating "A 'provider' of an interactive computer service includes
> websites that host third-party generated content ..."); Directory Assistants Inc. v.
> Supermedia, LLC, 884  F.Supp.2d 446,  451  (E.D. Va. 2012) (*citing* Global
> Royalties, Ltd. v. Xcentric Ventures, LLC, 544 F.Supp.2d 929, 932 (D. Ariz.
> 2008) (additional citation omitted)…

Roca Labs, Inc. v. Consumer Opinion Corp., 140 F. Supp. 3d 1311, 1318–19 (M.D. Fla. 2015).

Molly Brown's acknowledges that it is not an interactive computer service for all purposes. For instance, Defendant posts images and content which it has created specifically for its website. Thus, Defendant acknowledges that it would not be entitled to CDA immunity with respect to the images of Patrick, Middleton, Milani and Chesnes as those photos also include content in the form of text or graphics which Defendant created.

The same is <u>not</u> true with respect to the images of all the other Plaintiffs. Jones' image was apparently created or transformed by whatever clever person came up with the "King Kong meme". The rest of the images were taken by the Plaintiffs themselves – that is, after all, the definition of a "selfie". Accordingly, the Plaintiffs were the creators of the original content. That content was posted by other social media users, without change or modification, on the Molly Brown's Facebook page. That posting occurred when a user of the Molly Brown's Facebook page "liked" the content found on the Plaintiffs' Facebook page. Plaintiffs' allegations concerning Molly Brown's use of their images extends no farther than the statement that the Plaintiffs' selfies were posted on Molly Brown's Facebook page. That allegation is entirely consistent with Defendant's status as an internet computer service:

> "Plaintiff's allegations establish no more than that [Defendants] enable [ ] internet users to access publically available materials connected to plaintiff's name. And it is not unlawful to use a person's name 'primarily for the purpose of communicating information ...." <u>Stayart</u>, 783 F.Supp.2d at 1057 (quoting <u>Zacchini v. Scripps—Howard Broadcasting Co.</u>, 433 U.S. 562, 574, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977)). To find otherwise would allow any Internet search engine to face a claim from anyone whose name or image appears on the Internet in a way that person does not like. This is exactly what § 230 immunity tried to prevent.

<u>Obado v. Magedson</u>, 2014 WL 3778261 at *7 (D. N.J. 2014).

Numerous courts have held that a website or social media platform can be both

a service provider or user and an information content provider, with CDA immunity attaching to all of those posts which were not created by the interactive website:

> A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider. Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content.

Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1162–63 (9th Cir. 2008); *See, also,* Roca Labs, 140 F.Supp. 3d at 1318 ("[A]n entity can be both a service provider or user and an information content provider.").

It is easy enough to understand that Defendant is immune under §230 to the extent that it passively allowed the posting of images created by the Plaintiffs or other third parties. The more difficult question is whether §230 immunity has completely displaced state statutory and common law remedies. This is not an issue of federalism or the Supremacy Clause. It is clear enough that CDA immunity will prevail over any contrary state laws. *See,* 47 U.S.C. §230(e)(3) ('No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.'); *See, also*, Almeida, 456 F.3d at 1321 ("[T]he CDA preempts state law that is contrary to this subsection."). The difficulty here is that the CDA excludes actions seeking to enforce intellectual property rights from the general immunity afforded to internet service providers. *See,* 47 U.S.C. § 230(e)(2) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property.").

The unresolved question in the Federal Courts is whether state laws against misappropriation of likeness and equivalent tort remedies are preempted or whether they fall

within the exception for intellectual property. *See, e.g.*, Stayart v. Yahoo! Inc., 651 F.Supp. 2d 873, 887–88 (E.D. Wis. 2009), aff'd, 623 F.3d 436 (7th Cir. 2010) (Describing this question as "unsettled issue of federal law" and listing conflicting cases). The Eleventh Circuit considered whether §230 immunity barred state law misappropriation claims in Almeida, 456 F.3d at 1324 but did not decide the issue because the plaintiff ultimately did not state a claim under Chapter 540 – the misappropriation statute.

While there is conflicting law on the subject, Defendant advocates for the position adopted by the Ninth Circuit in Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1119 (9th Cir. 2007) "constru[ing] the term 'intellectual property' to mean 'federal intellectual property'" and holding that §230 immunity bars conflicting state law remedies against internet service providers. *See, also*, Free Kick Master LLC v. Apple Inc., 140 F.Supp. 3d 975, 983 (N.D. Cal. 2015) ("The Ninth Circuit has held that state intellectual property claims against service providers are also precluded by CDA §230."); Caraccioli v. Facebook, Inc., 167 F.Supp. 3d 1056, 1067 (N.D. Cal. 2016) (Refusing to allow plaintiff to amend complaint to include California statutory claim for  unauthorized use of likeness or a common law misappropriation claim as both were barred by §230 immunity).

While avoiding the ultimate issue, much as the Eleventh Circuit did in Almeida, the District Court in Massachusetts provided the theoretical underpinning why the "right of publicity" in an image should not be treated as an exempt "intellectual property right" for purposes of CDA immunity:

> Although certain publicity rights are akin to "intellectual property" rights, a person's image is not a "product of the human intellect." Black's Law Dictionary (10th ed.2014). "[T]he right of publicity flows from the right to privacy," *Alvarez*

> *Guedes v. Marcano Martinez,* 131 F.Supp.2d 272, 278 (D.P.R.2001) (citing
> numerous cases), which is an intangible right of a different nature. Despite the
> Doe plaintiffs' attorney's contention at oral argument that a photograph may be
> copyrightable, it does not follow that the underlying image is *ipso*
> *facto* protectable under intellectual property law.

Doe ex rel. Roe v. Backpage.com, LLC, 104 F. Supp. 3d 149, 163, n. 13 (D. Mass. 2015). The

state law claims based on the posting of "selfies" on Defendant's interactive website should be

dismissed pursuant to 47 U.S.C. §230.

      **E.**      **Plaintiff Jones' Image Represents a Humorous Meme Divorced from any**
              **Commercial Purpose.**

The claim that Molly Brown's misappropriated Plaintiff Jones' image is especially far-

fetched. That image was appropriated long ago by the gods of adolescent humor:



(Doc. 1-9 at 2). The image of Plaintiff Jones is obviously not intended to advertise for Molly Brown's, or the most recent King Kong movie, or even the Plaintiff. The image, coupled with the text is intended to be humorous and to share a sad truism about males in our society. There is no allegation in the Complaint that this text and formatting was created by Molly Brown's. Indeed, a quick search on the Internet will show that this image has gone viral to the point where it has achieved the status of a meme.[10] In addition to the sheer implausibility that this image promotes Molly Brown's or proposes any sort of commercial transaction, one must consider the treatment of intellectual property claims relative to other such memes.

In <u>Roberts v. Bliss</u>, 229 F. Supp. 3d 240 (S.D.N.Y. 2017), the plaintiff was an actress who appeared in a video highlighting street harassment of women that went "viral", receiving over 41 million views. The Defendants created an advertisement for Defendant TGI Friday's Inc. that superimposed images of life-sized appetizers over the plaintiff's image in the original video. Although there was no doubt that the advertising agency intended to coopt the goodwill associated with the original video, the Court dismissed the plaintiff's Lanham Act claim because "she has not plausibly alleged that the advertisement contains a misleading representation that

---

[10] This fact can be demonstrated by performing a Google search using the term "men don't notice King Kong meme". Among the first results are a host of sites which collect Internet memes, including http://weknowmemes.com/2012/03/some-statistics-100-percent-of-men-didnt-notice-king-kong-in-the-background/; https://me.me/i/some-statistics-100-of-men-didnt-notice-king-kong-is-6035442; and https://www.memecenter.com/fun/2145709/some-statistics (last accessed 11/28/18). None of these sites purports to claim a copyright to the image and neither does Plaintiff Jones. Indeed, this image has passed into the public domain in the same fashion as Sean Bean's image in his famous meme: "One does not simply walk into Mordor". *See, e.g.*, https://knowyourmeme.com/memes/one-does-not-simply-walk-into-mordor (last accessed 11/28/18).

she endorsed a product, or that the ad is likely to cause consumer confusion as to her sponsorship of it." Id. at 243. The same finding is warranted here.

In addition, one must consider how thoroughly dispensable Plaintiff's image is to the intent and effect of the humorous meme. The image achieved widespread distribution not because of Plaintiff's personal fame or renown, but simply because it is funny. The point is that one could substitute any pretty, buxom female for Plaintiff's image and the humorous effect would remain unchanged. In this regard, Plaintiff is what the law refers to as a "scenes a faire". Plaintiff's appearance in the image is simply a placeholder or stage prop for "any pretty girl". *See, generally*, Beal v. Paramount Pictures Corp., 20 F.3d 454, 459–60 (11th Cir. 1994) ("In addition to broad ideas, noncopyrightable material includes "*scènes à faire*" - stock scenes that naturally flow from a common theme."); *See, also*, MiTek Holdings, Inc. v. Arce Eng'g Co., 864 F. Supp. 1568, 1578 (S.D. Fla. 1994) (Same). None of Plaintiff Jones' state or Federal claims states a cause of action for misappropriation of her likeness.

### F.     Plaintiffs Fail to State a Cause of Action For Conversion.

Plaintiffs have failed to state a claim upon which relief may be granted for unlawful conversion. That is so because the Plaintiffs' factual allegations and legal theory simply do not align with the elements of the cause of action for conversion:[11]

---

[11]  Defendant is aware that other Courts have denied motions to dismiss counts for conversion and unjust enrichment in other cases involving these same plaintiffs and/or identical claims. *See, e.g.*, Krupa v. Platinum Plus, LLC, No. 8:16-CV-3189-T-33MAP, 2017 WL 1050222, at *8 (M.D. Fla. Mar. 20, 2017). Defendant maintains in good faith that those cases are not controlling and that the Florida authorities cited in this Motion provide superior persuasive authority for purposes of evaluating Plaintiffs' state law claims.

> Conversion is an unauthorized act that deprives another of his or her property, permanently or for an indefinite period of time. Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd., 450 So.2d 1157, 1160–61 (Fla. 3d DCA 1984). The essence of conversion, however, is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property. Senfeld, 450 So.2d at 1161; see Wilson Cypress Co. v. Logan, 120 Fla. 124, 127, 162 So. 489, 490–91 (Fla. 1935) (conversion consists of a taking with intent to exercise ownership inconsistent with owner's right of possession).

Brand v. Old Republic Nat. Title Ins. Co., 797 So.2d 643, 646 (Fla. 3d DCA 2001); See, also, Mayo v. Allen, 973 So.2d 1257, 1258 (Fla. 1st DCA 2008) ("It is well settled that a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time.").

At its core a claim for conversion is fundamentally a claim based on possession:

> In Florida, an action for conversion is regarded as a possessory action and the plaintiff must have a present or immediate right of possession of the property in question. Allen v. Universal C.I.T. Credit Corp., 133 So.2d 442 (Fla.1st DCA 1961).

Page v. Matthews, 386 So.2d 815, 816 (Fla. 5th DCA 1980); See, also, Prou v. Giarla, 62 F.Supp. 3d 1365, 1380 (S.D. Fla. 2014) ("To prove a conversion claim, a plaintiff must show "ownership of the subject property and ... that the other party wrongfully asserted dominion over that property.")

This presents a double problem for the Plaintiffs. The Plaintiffs allege that the Defendant made use of their images, but do not tie this to any exercise of dominion or control over any actual "property" (i.e. they do not claims that they "were permanently, or for an indefinite time, deprived of property").  More importantly, the Plaintiffs do not allege that they actually own the photographs in question. Without a positive assertion that they have a present right in the subject

photographs, Plaintiffs cannot state a cause of action for conversion. *See*, Page v. Matthews, 386 So.2d 815, 816 (Fla. 5th DCA 1980) ("[T]he plaintiff must have a present or immediate right of possession of the property in question."); *See, also*, Edwards v. Landsman, 51 So.3d 1208, 1213 (Fla. 4th DCA 2011) ("Thus, to state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property.").

While a state law conversion claim can probably be asserted with respect to a particular printed image (for instance, an image that has been framed or mounted), there is no good case law to suggest that conversion can reach the right to make use of an image or to claim damages where the possession does not involve a physical object. Instead, this is the job of copyright law. However, Plaintiffs have not asserted any claims based on copyright and any state law claims related to copyright would be expressly preempted. *See*, Garrido v. Burger King Corp., 558 So.2d 79, 82 (Fla. 3d DCA 1990) ("Plaintiff's claims for conversion and theft of the advertising campaign ideas conveyed to Burger King are preempted under section 301(a) of the act because the elements of those claims are equivalent to those protected and thus preempted by the act."); *See, also,* Daboub v. Gibbons, 42 F.3d 285, 289-90 (5th Cir. 1995) (State-law claims, including conversion, were equivalent to cause of action under Copyright Act and were thus preempted by Act. 17 U.S.C.A. § 301(a)).

### G.   **Plaintiffs Fail to State a Cause of Action For Unjust Enrichment.**

Plaintiffs have failed to state a cause of action for unjust enrichment.

> To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the

defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

Della Ratta, 927 So.2d at 1059; *see also* Hillman Constr. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994). "An action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." Henry M. Butler, Inc. v. Trizec Prop., Inc., 524 So.2d 710, 711 (Fla. 2d DCA 1988).

Golden v. Woodward, 15 So.3d 664, 670 (Fla. 1st DCA 2009); *See, also,* Grove Isle Ass'n, Inc. v. Grove Isle Associates, LLLP, 137 So.3d 1081, 1094 (Fla. 3d DCA 2014).

Plaintiffs have failed to allege that they have conferred a benefit on the Defendant and that Defendant was aware of the benefit, and that Defendant voluntarily accepted and retained the benefit. *Compare,* Fito v. Attorney's Title Ins. Fund, Inc., 83 So.3d 755 (Fla. 3d DCA 2011) (Title insurer failed to establish that it conferred a benefit on individual); Am. Safety Ins. Serv., Inc. v. Griggs, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) ("The plaintiffs must show they directly conferred a benefit on the defendants.").

WHEREFORE, Defendant moves this Court to sever the two distinct categories of claims brought by this disparate group of Plaintiffs and that the particular claims addressed in this Motion be dismissed for failure to state a cause of action and based on §230 immunity.

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been furnished to LUDMILA KHOMIAK, Esquire [mila@casaslawfirm.com], Brickell Bayview Center, 80 S.W. 8th Street, Suite 2000, Miami, Florida 33130, by E-Mail this 30th day of November, 2018.

*Respectfully submitted,*

BENJAMIN, AARONSON, EDINGER
& PATANZO, P.A.

_/s/ Gary S. Edinger_____

DANIEL R. AARONSON, Esquire    GARY S. EDINGER, Esquire
Florida Bar No.: 314579    Florida Bar No. 0606812
1700 East Las Olas Blvd., Suite 202    305 N.E. 1st Street
Ft. Lauderdale, Florida 33301    Gainesville, Florida 32601
(954) 779-1700  (Fax) (954) 779-1771    (352) 338-4440  (Fax) (352) 337-0696
danaaron@bellsouth.net    GSEdinger12@gmail.com

*Attorneys for Defendants*